THE T. E. HILL COMPANY, Defendant in Error, *vs.* THE UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff in Error.

*Opinion filed April 19, 1911—Rehearing denied June 7, 1911.*

1. PRACTICE—*when bill of exceptions in the municipal court is signed in time.* If one extension of sixty days' time to file a bill of exceptions in a municipal court case of the first class is properly allowed and the bill is signed and sealed by the judge within such sixty days the bill is signed and sealed within the time required by section 38 of the Municipal Court act.

2. SAME—*party cannot be prejudiced by delay of judge in signing bill of exceptions.* If a bill of exceptions is presented to the trial judge at such time that it can be filed within the prescribed time if signed and sealed, the party will not be prejudiced by the neglect or delay of the judge to sign the bill until after the prescribed time.

3. SAME—*when bill of exceptions may be filed nunc pro tunc as of the date of presentation.* If a bill of exceptions is presented within the time lawfully extended by the court and that fact is shown on the bill itself, it may be filed *nunc pro tunc* as of the date of presentation, within a reasonable time after the bill is actually signed by the judge.

4. SAME—*failure to file bill of exceptions nunc pro tunc is not ground for a motion to strike.* If a bill of exceptions is presented within the extension of time lawfully granted by the court and the date of presentation appears on the bill, the trial judge, upon signing the bill, should date it as of the date of presentation, and an order should be obtained to file it *nunc pro tunc* as of that date, but a failure to do so is a mere irregularity and is not good ground for a motion to strike the bill from the files.

5. BANKRUPTCY—*the receiver and marshal take possession of bankrupt's property for same purpose.* The receiver in bankruptcy and the marshal take possession of the bankrupt's property for substantially the same purpose, and while the language prescribed by the Bankruptcy act for the bonds to be given in the respective instances differs in some respects, the bonds are given for the same purpose and are to be given the same interpretation.

6. SAME—*when recovery may be had on petitioning creditor's bond when petition is dismissed.* Where a receiver in bankruptcy is appointed and a bond is given which is conditioned in the language required by section 69*a* of the Bankruptcy act, relating to bonds given when the marshal takes possession of the property, a recovery of damages and costs may be had on such bond, under section 3*e* of said act, when the petition is subsequently dismissed, even though the seizure by the receiver is not proven to have been wrongfully obtained.

7. SAME—*dismissal of the petition shows that receiver's seizure was wrongfully obtained.* Construing together sections 3*e* and 69*a* of the national Bankruptcy act, the words "wrongfully obtained," used in section 69*a*, must be held to include the securing of the order of seizure if the petition is thereafter dismissed, and it must therefore be held that a receiver's seizure is wrongfully obtained, if the petition is dismissed, even though the bankruptcy court had jurisdiction to enter the order and it was not obtained through fraud or with malice and without probable cause.

8. SAME—*allowance of damages by bankruptcy court is not a condition precedent to recovery on bond.* An allowance of damages by the bankruptcy court upon the dismissal of the petition, as provided in section 3*e* of the Bankruptcy act, is not a condition precedent to a recovery by the bankrupt upon a bond conditioned in the language of section 69*a* of such act, as the remedy provided by said section 3*e* is a cumulative one.

9. SAME—*wrongful detention of property by receiver after corporation has made an assignment is a damage.* The wrongful detention of property by a receiver in bankruptcy for more than a year after the corporation defendant made a voluntary assignment

for its creditors is a damage to the corporation within the meaning of a bond conditioned in the language of section 69*a* of the Bankruptcy act notwithstanding the making of the assignment, as any property remaining in the assignee's hands after the debts of the corporation are paid must be returned to it.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding.

JOHN A. BLOOMINGSTON, for plaintiff in error.

BUELL & ABBEY, and FRED W. BENTLEY, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action brought in the municipal court of Chicago by defendant in error against plaintiff in error, the latter company having signed as surety a petitioning creditors' bond for the appointment of a receiver in an involuntary bankruptcy proceeding in the United States District Court. On November 18, 1905, shortly after the receiver took possession of the property, defendant in error made a voluntary assignment for the benefit of creditors. The order of the United States Court of Appeals affirming the decision of the district court dismissing the petition was entered November 25, 1906. The suit on this bond was begun February 6, 1907. The cause was submitted to the trial judge without a jury and judgment entered in favor of plaintiff in error. The cause being taken to the Appellate Court for the First District by writ of error, the judgment of the trial court was reversed and judgment entered in the Appellate Court in favor of the defendant in error for $5000 debt and $5000 damages. Thereafter, on a petition for *certiorari,* the cause was brought here for further review.

Plaintiff in error has moved in this court to strike the bill of exceptions from the files, and this motion was taken with the case. The judgment was rendered in the municipal court March 19, 1908. On the same day an order was entered that a bill of exceptions be filed in forty days. April 25, 1908, the time for filing a bill of exceptions was extended sixty days from April 28, 1908. June 15, 1908, the time for filing a bill of exceptions was extended sixty days from June 27. September 28, 1908, the bill of exceptions was signed and was filed in the municipal court the same date. It was marked as follows: "June 25, '08, presented for signature.—John H. Hume, Judge." It was filed as of September 28, 1908, and not as of June 25.

It is first insisted that the motion to strike the bill of exceptions from the files should be sustained because section 38 of the Municipal Court act permits, in first-class cases such as this, only one extension of time for filing the bill of exceptions. If the bill of exceptions had been signed and sealed by the judge when it was presented on June 25, 1908, no question could be raised as to its being signed within the time required by statute. (*Haines* v. *Danderine Co.* 248 Ill. 259.) It is further insisted by counsel that the bill of exceptions should be stricken because it was filed September 28, 1908, when it should have been filed by a *nunc pro tunc* order as of the date when it was presented to the trial judge. The rule is, that if a bill of exceptions is presented to the trial judge at such time that it can be filed within the time provided by the order of the court, the party will not be prejudiced by the neglect or delay of the judge to sign the bill until after the time fixed for that purpose has expired. If the date of presentation appears on the bill when it is signed and sealed it can be filed *nunc pro tunc* as of the date of such presentation. (*Hall* v. *Royal Neighbors,* 231 Ill. 185; *Underwood* v. *Hossack,* 40 id. 98; *Evans* v. *Fisher,* 5 Gilm. 453; *Goodrich* v *Cook,* 81 id. 41.) A bill of exceptions purports to be

signed at the time the exception is taken in the course of the trial, whether it is presented then or afterwards, but if it is presented within the time as extended by the court and that fact is shown on the bill, it may be afterwards filed as of that date within a reasonable time after it is actually signed. (*Hall* v. *Royal Neighbors, supra.*) Where a bill of exceptions is actually signed and filed ten days after the trial, it is not necessary to render it effective that it should be entered and filed *nunc pro tunc* as of the date of the trial. (*Hunnicutt* v. *Peyton,* 102 U. S. 333.) The court said in the case just cited, that while the bill might be signed as of the date of the judgment, the giving of the true date would not destroy it; that "the reason why it is required that bills shall be presented for signature during the term is that the rulings made may be fresh in the memory. Are they any more fresh in his memory when he antedates the bill or orders it to be filed as of the date of the trial than when he gives to the signature and filing their true date? We cannot doubt that in a multitude of cases bills of exception have been signed after judgment and filed without any order that the signature and filing be entered *nunc pro tunc,* but, when the true time of the signature appeared, having been treated as sufficient whenever they have shown that the exceptions were taken during the trial." While it is true that this reasoning was applied in a case where the bill of exceptions was signed during the term, it applies with equal force where the bill of exceptions is actually presented to the judge within the time provided by the order of court, for it is conceded that, under the authorities, having been so presented it could be filed, after it was signed and sealed, as of the date when it was so presented, the same as a bill of exceptions signed and sealed during the term when the trial was had could be signed and sealed during the term and filed as of the date of the trial. As a matter of proper practice the judge should have dated it, after signing, as of the date when it was presented,

and an order should have been procured filing it as of that date. At the most, however, the failure to do this was only an irregularity and does not render the bill of exceptions void. (*Railway Conductors' Benefit Ass'n* v. *Leonard*, 166 Ill. 154.) The motion to strike the bill of exceptions will be denied.

It is insisted that there was no breach of the bond upon which this suit was brought. It was given pursuant to the order of the United States District Court, which, after reciting that the appointment of a receiver was necessary for the preservation of the estate, provided that the petitioning creditors file a bond in the sum of $5000, as provided by statute, before said receiver should take possession under the appointment. The condition of the bond given was, that if the receiver was appointed and seized the property the said T. E. Hill Company should be indemnified "for such damages as it shall sustain in the event such seizure shall prove to have been wrongfully obtained," etc. It is provided by the national Bankruptcy act, in section 3*e*, that on an application being made, after a petition has been filed to adjudge a person a bankrupt, to take charge of the property of said bankrupt prior to the adjudication and pending a hearing, a bond shall be filed conditioned "for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, all costs, expenses and damages occasioned by such seizure, taking and detention of the property," etc. Section 69*a* of the Bankruptcy act provides for the taking possession of the property by the marshal on the giving of a bond conditioned to indemnify the bankrupt "for such damages as he shall sustain in the event such seizure shall prove to have been wrongfully obtained." The Bankruptcy act also provides that the Supreme Court of the United States shall prescribe all necessary rules and forms of orders and the procedure for carrying the act into effect, and that court has accordingly issued a number of general orders, among others a

form of a bond when the marshal is directed to seize the property. That court has also provided that "the several forms annexed to these general orders shall be observed and used, with such alterations as may be necessary to suit the circumstances in each particular case."

It is conceded that if the condition of this bond had been in accordance with section 3*e* there could have been a recovery as the petition in bankruptcy was dismissed, but it is argued that the form of the bond corresponded to section 69*a*, and that there can be no damages recovered because the seizure by the receiver was not proven "to have been wrongfully obtained." While the language as to the conditions of the bonds in the two sections differs, still, as the appointment of the receiver and the order for the marshal to take possession are intended to accomplish the same object, the provisions in the two clauses should, if possible, be given the same interpretation. That the receiver and the marshal take possession of the property for substantially the same purpose is shown not only by the wording of subsection 3 of section 2 of the Bankruptcy act, but has been so held by the courts. (*Guaranty Title and Trust Co.* v. *Pearlman,* 144 Fed. Rep. 550; *Whitney* v. *Wenman,* 198 U. S. 539.) Manifestly, the Supreme Court of the United States was of this opinion, otherwise a special form of bond would have been prescribed for the appointment of a receiver under section 3*e*.

We have already held in *Hill Co.* v. *Contractors' Supply and Equipment Co.* 249 Ill. 304, that the United States District Court had jurisdiction of the parties and the subject matter in these same bankruptcy proceedings for the appointment of a receiver, and that therefore there was no common law action, unless malice and lack of probable cause could be shown, growing out of such appointment of the receiver, even though the bankruptcy proceedings were subsequently dismissed. It must be held, therefore, that section 3*e* creates a new cause of action whereby damages

and costs may be recovered under the bond required, if the petition is dismissed without malice and probable cause being shown

It is further insisted that as the court had jurisdiction the seizure of the property was not "wrongfully obtained," under the condition of the bond, merely because the petition was dismissed; that these words mean that the order must have been obtained through some fraud or imposition upon the court or with malice and lack of probable cause. If section 69a were the only provision of the Bankruptcy act on this subject there would be force in this argument, but in the light of the common purpose of the two sections, "wrongfully obtained," in section 69a, should be held to include the securing of an order of seizure when thereafter the petition shall be dismissed. The two sections could then fairly be interpreted to provide for practically the same bond, as the Supreme Court provides in its rules, with such minor changes as may be necessary to suit the circumstances, such as substituting the word "receiver" for "marshal." This being so, the seizure of the property by the receiver must be held "to have been wrongfully obtained."

It is further argued that there could be no recovery under section 3e, reading, "counsel fees, costs, expenses and damages shall be fixed and allowed by the court and paid by the obligors in said bond," until after the damages had been fixed by the United States court. If the bond given had been expressly conditioned for the payment of such damages as should be first allowed by such court, then there would have been no breach of the bond until the bankruptcy court had first allowed such damages. The construction that we have placed upon the Bankruptcy act justifies the conclusion that such allowance is not a condition precedent; that the remedy given under section 3e is cumulative, and the plaintiff may, if he pleases, pursue this remedy on the bond. The fact that the plaintiff in error is a surety company tends to strengthen this conclusion as to

the proper construction of this bond, for its liability under this bond is to be held and construed, in a certain sense, as a contract of insurance. *United States Fidelity Co.* v. *First Nat. Bank,* 233 Ill. 475; *Lesher* v. *United States Fidelity Co.* 239 id. 502; *American Bonding and Trust Co.* v. *Baltimore and Ohio and Southwestern Railroad Co* 124 Fed. Rep. 866.

The Contractors' Supply and Equipment Company, which filed the petition for the appointment of a receiver consented, in writing, that the plaintiff in error could interpose as a set-off a claim due it from defendant in error. It is contended that the Appellate Court should have allowed this set-off. We deem it a sufficient answer to this contention to state that we find no proper proof in this record that said petitioning creditor was the owner of any indebtedness at the time of the trial of this cause which it could transfer to plaintiff in error.

It is further urged that as the defendant in error made a voluntary assignment for the benefit of its creditors two months after the order appointing the receiver, and said bond was only to indemnify as to such damages as should come to defendant in error, no damages could be considered as to this assignee. The assignor in this case retained an interest in its property, and, notwithstanding the assignment, remains liable for debts. After their payment the remaining property, if any, is to be returned to it. Wrongful detention of the property after the voluntary assignment would therefore "damage" the defendant in error, as that word is used in this bond.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*